**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

JOHN G. MARSHALL,               )
                                )
                Plaintiff,      )
                                )
        v.                      )        1:14CV542
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
                Defendant.      )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, John G. Marshall, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 12, 16). For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 13, 2010 (protective filing date), alleging his disability began on that same date. (Tr. 178-81; see also Tr. 86, 224.) Upon denial of that application initially (Tr. 86-102, 121-29) and on reconsideration (Tr. 103-18, 131-38), Plaintiff requested a hearing

de novo before an Administrative Law Judge ("ALJ") (Tr. 139-40). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 28-83), at which Plaintiff amended his alleged onset date to March 31, 2011, his 50th birthday (<u>see</u> Tr. 36-37, 201). By decision dated March 29, 2013, the ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 8-23.) On May 1, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.  [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2013.

2.  [Plaintiff] has not engaged in substantial gainful activity since March 31, 2011, the amended alleged onset date of disability.

3.  [Plaintiff] has the following severe impairments: chronic left ankle pain and chronic right leg pain.

. . . .

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . . .

5.  [Plaintiff] has the residual functional capacity to perform light work . . . except that he can frequently climb and balance but can only occasionally stoop and climb ladders. Although an assistive device has not been prescribed the undersigned gives [Plaintiff] the benefit of the doubt and finds . . . that [Plaintiff] requires the use of a cane to ambulate. He also requires the

2

option to alternate between sitting and standing at will throughout the workday.

. . . .

6.     [Plaintiff] is capable of performing past relevant work as an Electronic Assembler.  This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . . .

7.     [Plaintiff] has not been under a disability, as defined in the [] Act, from March 31, 2011, the amended alleged onset date of disability, through the date of this decision.

(Tr. 13-22 (internal parenthetical citations omitted).)[1]

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  In this case, Plaintiff has not shown entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,

---

[1] The ALJ further noted the VE's testimony that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform the jobs of crossing tender, information clerk, and storage facility rental clerk.  (See Tr. 22; see also Tr. 75-78.) Accordingly, the ALJ found in the alternative that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Tr. 22.)

the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before

4

[the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id.  "These regulations establish a

---

[2]  The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. . . .Supplemental Security Income . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3]   "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ failed to give good reasons for assigning no weight to certain of the opinions of consultative examiners Dr. Peter Morris and Dr. Patrick B. Sullivan (Docket Entry 13 at 2-7); and

(2) the ALJ improperly rejected the Third Party Function Report completed by Plaintiff's girlfriend, Julie Spencer (id. at 7-10).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 17 at 4-16.)

### 1. Evaluation of Consultative Examiners' Opinions

In Plaintiff's first assignment of error, he faults the ALJ for failing to give good reasons for rejecting the physical limitations opined by consultative examiner Dr. Morris and the diagnosis of depression offered by consultative psychologist Dr. Sullivan. (Docket Entry 13 at 2-7.) In regards to Dr. Morris, Plaintiff challenges the ALJ's rationale that Dr. Morris' findings "fully contradict" his opinions. (Id. at 6; see also Tr. 20, 330-36.) Further, Plaintiff contends that, in rejecting Dr. Sullivan's diagnosis of depression, "[t]he ALJ substituted her lay opinion for that of the Commissioner's psychological expert." (Id. at 7; see also Tr. 325-29.) Plaintiff's contentions do not warrant relief.

8

Consultative examiners do not constitute treating sources under the regulations, see 20 C.F.R. § 404.1527(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), rec. adopted slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in 20 C.F.R. § 404.1527(c)(1) through (6), and expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of the . . . factors [in 20 C.F.R. § 404.1527(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions"); Social Security Ruling 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p") ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must

9

explain why the opinion was not adopted."); see also Gordon v.
Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (holding that
reviewing court generally "cannot determine if findings are
supported by substantial evidence unless the [ALJ] explicitly
indicates the weight given to all of the relevant evidence").

Dr. Morris consultatively examined Plaintiff on June 30, 2011,
and diagnosed Plaintiff with "[s]tatus post injury to right femur,
right knee and right lower leg in 1985," "[r]ecent fracture of the
left fibula," and "[d]epression." (Tr. 335.) As a result of these
impairments, Dr. Morris opined that Plaintiff could stand and walk
for a total of two hours and sit for a total of six hours in an
eight-hour work day, with a break once per hour, could lift and
carry less than ten pounds, could not perform postural movements
throughout an eight-hour work day, and could not work at heights.
(Tr. 335-36.)

After discussing Dr. Morris' findings and opinions, the ALJ
found as follows:

> The undersigned assigns significant weight [to] Dr.
> Morris' observations that [Plaintiff] can handle all of
> his personal care, could sit comfortably throughout the
> examination, could take his shoes on and off without
> difficulty, had tenderness in his leg, and could not
> perform postural maneuvers due to a recent left ankle
> injury. The undersigned also assigned significant weight
> [to] Dr. Morris' observation that [Plaintiff] could walk
> without assistance. All of these observations are
> consistent with the medical evidence as a whole and
> accurately reflect [Plaintiff's] symptoms as reported
> during the examination to other medical providers, and at
> the hearing. The undersigned assigns no weight to Dr.
> Morris' opinions regarding [Plaintiff's] limitations as

10

they fully contradict the above observations and examination.

(Tr. 20.)

Here, the ALJ did not specifically identify which of Dr. Morris' examination findings "fully contradict" his physical limitations for Plaintiff. (See Tr. 20.) Moreover, a review of Dr Morris' observations and findings on examination does not elucidate which such findings the ALJ found "fully contradict[ory]." Dr. Morris' examination reflects that Plaintiff "had a very slow and antalgic gait," refused to try tandem walking, heel walking, and toe walking and could not perform "postural maneuvers" because of his left ankle injury, had decreased range of motion in his cervical and lumbar spines, right hip, right knee, and both ankles, had tenderness to palpation in the right hip and both lower legs and ankles, had some atrophy in his right lower leg, had 4/5 strength in the left leg and 3/5 strength in the right leg, and complained of some numbness in his right leg. (Tr. 334-35.) Given these findings, substantial evidence does not support the ALJ's bare conclusion that Dr. Morris' physical limitations "fully contradict" his findings on examination. (Tr. 20.)

However, Plaintiff cannot show any prejudice arising from the ALJ's failure to properly explain her rationale with regard to Dr. Morris' physical limitations where substantial evidence supports the ALJ's ultimate decision to assign "no weight" to Dr. Morris' limitations. Notably, Dr. Morris' limitations depend, in large

part, on the fact that, as of the date of Dr. Morris' examination, June 30, 2011, Plaintiff's left ankle fracture had not yet completely healed. For example, Dr. Morris observed that Plaintiff "fractured his left fibula two months ago and is <u>still in recovery</u>," that he "uses a walking boot all the time" (Tr. 331 (emphasis added)), and that Plaintiff "refused to try tandem walking, heel walking and toe walking" and "was unable to perform postural maneuvers because of the <u>recent</u> left lower extremity injury" (Tr. 334 (emphasis added)). Dr. Morris based his limits on standing, walking, and heights in part on Plaintiff's inability to tandem, heel, and toe walk and included postural restrictions based on Plaintiff's inability to perform postural movements because of his recent left ankle injury. (Tr. 335-36.) As recognized by the ALJ, just over one month later, [Plaintiff's] left ankle fracture had healed and upon physical examination he showed no tenderness over the fracture site and had gained full ankle mobility." (Tr. 14.)

In short, although the ALJ did not sufficiently explain the <u>basis</u> for the weight she assigned to Dr. Morris' opinions, substantial evidence supports her ultimate decision to afford such opinions "no weight." (Tr. 20.) Under those circumstances, the Court should find the ALJ's error harmless. See <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social

Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.").

Dr. Sullivan evaluated Plaintiff at the behest of the Social Security Administration on June 13, 2011. (Tr. 325-29.) Dr. Sullivan's report reflects that Plaintiff maintained a "flat, blunted, restricted affect" and a "moderately depressed" mood. (Tr. 327.) Further, Dr. Sullivan found Plaintiff's thought processes "highly circumstantial and obsessively preoccupied with physical pain and symptoms" and observed "mild persecutory delusional thinking." (Id.) Plaintiff reported that he "hear[s] things a lot" and "sometimes see[s] somebody near [his] bed." (Id.) As a result of Dr. Sullivan's observations and Plaintiff's symptom reports, Dr. Sullivan diagnosed "dysthymic disorder" and rated Plaintiff's Global Assessment of Functioning as "50 to 55." (Tr. 329.)[6]

The ALJ recited Dr. Sullivan's findings and conclusions and remarked as follows:

---

[6] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text revision 2000). A GAF of 41 to 50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34. A GAF of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Id. A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed.2013).

The undersigned assigns significant weight to the observations and analysis of [Plaintiff's] activities of daily living as provided in Dr. Sullivan's report as they are consistent with the remaining medical evidence and somewhat reflect [Plaintiff's] symptoms as he reported them to other medical providers and at the hearing except that [Plaintiff] has never reported to any other medical providers that he has experienced hallucinations of any kind. The undersigned further assigns no weight to the consultative examiner's diagnosis of depression as [Plaintiff] has had nominal medical treatment for this condition, has adequate activities of daily living, has had no hospitalizations for the condition, and [the diagnosis] is based on his subjective complaints, including [Plaintiff's] reports of hallucinations, which are inconsistent with what he has reported to other medical providers and at the hearing.

(Tr. 19.)

The ALJ's statement that she assigned "no weight" to Dr. Sullivan's "diagnosis of depression" fails to satisfy the regulatory requirements for several reasons. First, at step two of the SEP, the ALJ found that "depression" constituted a medically determinable impairment for Plaintiff but did not rise to the level of a severe impairment. (Tr. 15-16.) Thus, the ALJ's rejection of Dr. Sullivan's "depression" diagnosis conflicts with the ALJ's own finding at step two.

Second, Dr. Sullivan did not diagnose Plaintiff with "depression" but rather with "dysthymic disorder." (Tr. 329.) Although the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") does not include a mental disorder generically entitled "depression," the DSM-IV-TR specifies that "dysthymic disorder," characterized by "a chronically depressed mood that

14

occurs for most of the day more days than not," must last "for at least [two] years." DSM-IV 376. Because of this durational requirement, the Court cannot determine whether the ALJ, in rejecting the so-called "depression" diagnosis, merely disputed whether Plaintiff suffered from depression at all or rather questioned Dr. Sullivan's opinion that Plaintiff had suffered (or would suffer) from his symptoms long enough for them to constitute dysthymic disorder.

Third, the ALJ did not discuss the weight, if any, she assigned to Dr. Sullivan's GAF of 50 to 55, representing moderate to serious difficulty in social, occupational, or school functioning. See Locklear v. Colvin, No. 7:14-CV-154-FL, 2015 WL 4740786, at *9 (E.D.N.C. Aug. 10, 2015) (unpublished) ("GAF scores are an assessment of an individual's social, occupational and psychological capacities and should be considered by the ALJ in determining a claimant's RFC."); see also Administrative Message 13066 (AM-13066) (effective July 22, 2013) ("For purposes of the Social Security disability programs, when it comes from an acceptable medical source, a GAF rating is a medical opinion . . . . An [ALJ] considers a GAF score with all of the relevant evidence in the case file and weighs a GAF rating as required by 20 CFR §[] 404.1527(c) . . . .").

Although the ALJ erred in her analysis of Dr. Sullivan's opinions, the Court should conclude that error remains harmless

under the circumstances of this case. During the hearing, the ALJ posed multiple hypothetical questions to the VE, including hypothetical three, which built upon hypotheticals one and two and assumed a capacity for light work, frequent climbing of ramps and stairs, frequent balancing, occasional stooping, occasional climbing of ladders, no exposure to hazardous conditions or heights, and the need to use an assistive device to ambulate, as well as the following mental limitations: "simple, routine tasks; simple, short instructions; simple work-related decisions; few work place changes; no work at [a] fixed production rate or pace; occasional interaction [with the] general public, co-workers, [and] supervisors." (Tr. 75-77.) In response, the VE cited three jobs, available in significant numbers in the national economy, that Plaintiff could perform. (Tr. 77.) The ALJ then asked hypothetical four, adding the need to alternate between sitting and standing, and the VE indicated the same jobs remained available. (Tr. 77-78.) Plaintiff does not suggest how a re-evaluation of Dr. Sullivan's opinions would <u>further</u> alter the RFC and the corresponding hypothetical question or throw into question the ALJ's ultimate conclusion that Plaintiff could perform other jobs in the national economy. (Docket Entry at 13 at 7.)

The Court therefore should decline to remand the case due to any errors in the assessment of Dr. Sullivan's diagnosis. <u>See</u> <u>Fisher</u>, 869 F.2d at 1057 ("No principle of administrative law or

16

common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."); <u>see also</u> <u>McAnally v. Astrue</u>, 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate that, '[w]ith regard to [her] hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitation.'"); <u>Anderson v. Colvin</u>, No. 1:10CV671, 2013 WL 3730121, at *7 (M.D.N.C. Jul. 12, 2013) (Webster, M.J.) (unpublished) ("Plaintiff has failed to establish how further scrutiny of the combination of her impairments results in any greater functional limitations than those already set forth in her RFC."), <u>recommendation adopted in relevant part</u>, 2014 WL 1224726 (M.D.N.C. Mar. 25, 2014) (Osteen, C.J.) (unpublished); <u>Miles v. Astrue</u>, No. 8:07-3164-RBH, 2009 WL 890651, at *14 (D.S.C. Mar. 30, 2009) (unpublished) ("[T]he plaintiff details various pieces of evidence which she contends the ALJ misconstrued . . . . The plaintiff, however, has not explained how such evidence, if fully considered, would have proven additional limitations sufficient to eliminate the possibility that [the] plaintiff could perform the sedentary work required of her past relevant work. Accordingly,

17

error, if any, in either failing to consider such evidence or in misconstruing it, would be harmless.").

In sum, Plaintiff's first assignment fails as a matter of law.

## 2. Evaluation of Third Party Function Report

In Plaintiff's second and final issue on review, Plaintiff argues that the ALJ erred by rejecting the Third Party Function Report completed by Plaintiff's girlfriend, Julie Spencer. (Docket Entry 13 at 7-10 (citing Tr. 235-45).) In particular, Plaintiff contends that the ALJ's stated grounds for discounting Ms. Spencer's statement, i.e., because Ms. Spencer "is not a medical doctor" and "has a natural bias in favor of [Plaintiff] due to their personal relationship" (Tr. 20), "amounted to a wholesale dismissal of [Ms. Spencer's statement] without any reference to supportive evidence" (Docket Entry 13 at 9). According to Plaintiff, the ALJ's improper analysis does not constitute harmless error, because "the ALJ found [Plaintiff's] testimony . . . not credible and [his girlfriend's] statement supports and corroborates [his] testimony." (Id. at 10.) Plaintiff's contentions provide no basis for relief.

In addition to evidence from "acceptable medical sources," 20 C.F.R. § 404.1513(a) (defining "acceptable medical sources" as including licensed medical or osteopathic physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists), the ALJ

18

may consider evidence from other non-medical sources, such as statements from spouses, parents, caregivers, siblings, other relatives, friends, neighbors, and clergy, to determine the severity of a claimant's impairments and his or her residual ability to work, see 20 C.F.R. § 404.1513(d)(4). See also Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("SSR 06-03p"). "[I]nformation from [non-medical sources] may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function[;]" however, in considering evidence from these sources, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *2, *6.

Ms. Spencer completed a Third Party Function Report in February, 2011, in which she related that she lived with Plaintiff, had known him for 23 years, and spent about ten to 30 minutes per day with him. (See Tr. 235.) Ms. Spencer indicated that Plaintiff could handle his personal needs, that he drove and could go out alone, that he cooked meals once per day, that he took care of his

dog, that he watched television and movies, and that he purchased groceries and personal items for about ten to 20 minutes at a time on a near daily basis. (See Tr. 235, 239-42.) According to Ms. Spencer, Plaintiff had poor sleep due to pain, could walk one quarter of a mile before needing to rest, and used a cane all of the time. (See Tr. 239, 243-44.)

The ALJ summarized Ms. Spencer's report, and then evaluated it as follows:

> The undersigned assigns little weight to the opinions of Ms. Spencer as she is not a medical doctor who can diagnose [Plaintiff's] alleged impairments nor assess their limitations. Furthermore, she has a natural bias in favor of [Plaintiff] due to their personal relationship.

(Tr. 20.) On one hand, SSR 06-03p expressly permits an ALJ to consider "the nature and extent of the relationship" between a claimant and a third party source, as well as "any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6. Thus, the ALJ did not commit per se error in relying on the above-quoted reasons for rejecting Ms. Spencer's report. On the other hand, Plaintiff's point that the bases cited by the ALJ could discredit virtually "any family member, friend, housemate or acquaintance who testified or gave a statement in any case" (Docket Entry 13 at 9) has some merit. Ideally, the ALJ would provide more complete, evidence-based reasons for rejecting a third party's report. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of

20

the lay witnesses, he must give reasons that are germane to each witness."); Cooper v. Astrue, No. 2:08-CV-18-FL, 2009 WL 928548, at *5-6 (E.D.N.C. Apr. 3, 2009) (unpublished) ("If the ALJ decides to reject lay testimony concerning a [c]laimant's pain or other symptoms, the ALJ must do so explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's determination is supported by substantial evidence." (citing Hatcher v. Secretary, Dep't of Health & Human Servs., 898 F.2d 21 (4th Cir. 1989))).

However, even assuming that the ALJ's stated reasons for discrediting Ms. Spencer constituted error, no basis exists for remand of the case. Plaintiff has failed to demonstrate how a proper analysis of Ms. Spencer's report would have resulted in a different outcome in the case. (See Docket Entry 13 at 7-10.) That fact defeats this assignment of error. See Dyrda v. Colvin, 47 F. Supp. 3d 318, 326-27 (M.D.N.C. 2014) (Schroeder, J.) (finding ALJ's failure to properly evaluate lay witness's statement harmless error where "the statement added little of substance to the record because it merely corroborated [the plaintiff's] testimony, which the ALJ expressly found not to be credible in light of the medical evidence and record" and where the plaintiff [made] no attempt to show at which step he was prejudiced by the ALJ's failure to explain the weight given to the lay witness's statement").

Accordingly, Plaintiff's second issue on review provides no basis for relief.

### III.  CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 12) should be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) should be granted, and that this action be dismissed with prejudice.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

October 14, 2015